SD:LHE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

DONALD SOTO,

        Defendant.

- - - - - - - - - - - - - - -X

15-387 M

COMPLAINT AND AFFIDAVIT IN SUPPORT OF ARREST WARRANT

(21 U.S.C. § 846)

FILED UNDER SEAL

EASTERN DISTRICT OF NEW YORK, SS:

GEORGE GJELAJ being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

On or about and between August 2014 and April 2015, within the Eastern District of New York and elsewhere, the defendant DONALD SOTO did knowingly and intentionally conspire to distribute and possess with intent to distribute a substance containing cocaine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841.

(Title 21, United States Code, Sections 841, 846).

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been involved in the investigation of numerous cases involving narcotics conspiracies. I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file, and reports of other law enforcement officers involved in the investigation.

2. Since August 2014, Special Agents with the FBI and the Drug Enforcement Administration ("DEA") have been investigating narcotics offenses committed in the Eastern District of New York and elsewhere by DONALD SOTO and others. In the course of the investigation, the defendant DONALD SOTO was identified as a supplier of cocaine operating in the Bronx. Another individual, Co-Conspirator #1 ("CC1"), was identified as a source of supply of cocaine to DONALD SOTO. A third individual, Co-Conspirator #2 ("CC2"), was identified as a purchaser of cocaine from DONALD SOTO.

3. On March 30, 2015, the Honorable Jesse M. Furman of the Southern District of New York signed an Order authorizing the interception of wire and electronic communications sent to and from a telephone subscribed to DONALD SOTO. This Order renewed a previous order authorizing the interception of wire communications issued by Judge Furman on February 24, 2015.[2] Over the 60-day interception period, agents intercepted approximately 178 wire communications between SOTO and CC1.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

[2] Any summaries of communications intercepted pursuant to these Orders set forth herein refer to draft translations of communications in Spanish to English and are set forth in

4.      On March 2, 2015, at approximately 10:28 p.m., SOTO called CC1, and told him that he had "18" and asked if CC1 would come by.  CC1 asked SOTO if he could bring it to him, and SOTO explained that he had to go to Queens to get it, and that it would take about 2 hours.  One minute later, at approximately 10:29 p.m., SOTO called CC2, and asked CC2 if he can "go over there and pick it up" so that he can give that "to them."  CC2 asked how long SOTO would take, and SOTO stated that he would be there by 11.  CC2 agreed. Based upon my training and experience with the investigation to date, I believe that in this call, SOTO was arranging to collect $18,000 from CC2 in Queens, New York, to supply to CC1 in order to secure an additional supply of narcotics.

5.      On April 13, 2015, at approximately 11:24 a.m., CC1 called DONALD SOTO and reported that he would be calling SOTO at around 4 p.m.  SOTO asked why and CC1 replied "to bring you 'the stuff.'"  Later in the conversation, SOTO advised CC1 that "the stuff" must be better this time.  SOTO complained that CC1 started "all good" but now is changing, and complained that CC1 is "putting less to make something extra."  SOTO directed CC1 to make sure the quality is good, because people are calling him, and SOTO complained that he is not making any money "from it."  Based upon my training and experience with this investigation to date, including other intercepted communications, I believe that this communication related to CC1 delivering a supply of cocaine to SOTO.  I believe that SOTO's complaints about "putting less to make extra" were a reference to CC1 providing powder cocaine that was over-diluted with additives (i.e., "cut").

6.      At 7:09 p.m. on April 13, 2015, SOTO received another call from CC1.  During this call, CC1 asked SOTO for his location.  SOTO advised that he was still working at

---

sum and substance and in part.

"the shop." Based upon previously intercepted communications, physical surveillance, and bank records, I believe SOTO to be an owner of Final Touch Auto Body, an auto body shop located at 1190 Commerce Avenue, Bronx, New York. CC1 then replied that he would be coming "ready." SOTO acknowledged and stated that "they are all there, so they can see his face," and tells CC1 that he "can come, but don't bring 'garbage.'" Based upon my training and experience with this investigation to date, I believe this call related to CC1 delivering cocaine to DONALD SOTO at Final Touch Auto Body. I believe that CC1's reference to coming "ready" meant that he would be coming with a supply of cocaine, and that SOTO's admonishment to CC1 not to bring garbage referred to his direction that CC1 supply quality cocaine.

       7. At the same date and time that SOTO received the call described in paragraph 5, supra, agents were conducting surveillance in the vicinity of 3333 Bruner Avenue, where CC1 controlled an apartment used to store narcotics. At approximately 7:30 p.m. on April 13, 2015, investigating agents observed CC1 depart 3333 Bruner Avenue carrying a black shopping bag that appeared to be heavy. He then entered an SUV and drove to the vicinity of East 222nd Street and Givan Avenue in the Bronx, where agents, together with detectives from the New York City Police Department, stopped the vehicle. A detective approached the defendant and requested his consent to search his vehicle, which he provided. The defendant acknowledged that there was contraband in the vehicle. Upon conducting a search, agents discovered a hidden compartment located behind the center of the back seat of the vehicle. Adjacent to the compartment in the passenger area was an empty black shopping bag. Upon opening the hidden compartment, agents discovered approximately 1.4 kilograms of cocaine,

specifically, one kilogram size brick-like package in cellophane, plus two smaller packages wrapped in cellophane. At that time, CC1 was placed under arrest.

WHEREFORE, your deponent respectfully requests that the defendant DONALD SOTO be dealt with according to law.

GEORGE GJELAJ
Special Agent
Federal Bureau of Investigation

Sworn to before me this
28th day of April, 2015

THE HONORABLE VIKTOR V. POHORELSKY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK